**[Cite as *Haddox v. Haddox*, 2022-Ohio-3500.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Joan H. Haddox | Court of Appeals No.  L-21-1168 |
| Appellant | Trial Court No.  DR 1997-0600 |
| v. | |
| Donald H. Haddox, Jr. | **<u>DECISION AND JUDGMENT</u>** |
| Appellee | Decided:  September 30, 2022 |

* * * * *

Theodore B. Tucker, III, for appellant.

Joseph B. Clarke, for appellee.

* * * * *

**ZMUDA, J.**

## I.    Introduction

**{¶ 1}** In this post-divorce action, appellant, Joan Haddox, appeals the judgment of

the Lucas County Court of Common Pleas, Domestic Relations Division, issuing a

division of property order (DOPO) concerning its prior award of a portion of Joan's State

Teachers Retirement System of Ohio (STRS) retirement benefit to appellee, Donald Haddox.

**A.      Facts and Procedural Background**

{¶ 2} This action began on April 21, 1997, the date Joan filed her complaint for divorce.  During the pendency of the divorce proceedings, an issue arose concerning the valuation and distribution of future distributions from Joan's STRS retirement account.  At the time, Joan was still employed as an elementary school teacher.  Likewise, Donald was a teacher and was also enrolled in STRS.  The trial court's handling of Donald's retirement benefits are not at issue in this appeal.

{¶ 3} Relevant to the issue surrounding Joan's STRS benefit, a letter dated December 29, 1997, was sent to the parties' counsel from an attorney and certified public account who was retained to perform a review and evaluation of the parties' retirement benefits, William Kimmelman.  In the letter, Kimmelman informed counsel that STRS told him "the law has recently changed to allow members of the Plan to withdraw contributions with interest" and that "the Board has determined that rather than provide estimated benefits, they would provide the lump sum distribution value."  Kimmelman stated that the lump sum present value of the marital portion of Joan's STRS account was $87,850.90 as of the date of the letter.

{¶ 4} Eventually, the parties were divorced pursuant to a judgment entry of divorce issued by the trial court on March 26, 1999.  In its entry, the trial court noted:

2.

The parties agree that at the time of [Joan's] retirement, the OSTRS and Social Security benefits acquired during the marital period from December 19, 1981 through April 30, 1997, shall be divided equally between the parties and the appropriate offset made from [Joan's] OSTRS plan to [Donald's]. The Court shall retain jurisdiction to make the order in the future.

{¶ 5} Approximately 17 years later, Joan decided to retire from teaching. She applied for retirement using an online portal and, in so doing, elected to receive her benefits under the "single life annuity" option.

{¶ 6} Meanwhile, Donald was informed of Joan's retirement plans ahead of her date of retirement. On April 14, 2016, after he was made aware of Joan's plans, Donald sent a letter to STRS concerning Joan's upcoming retirement, in which he provided STRS with a copy of the trial court divorce decree and thanked STRS for "taking care of this for us by including this to both of our accounts."

{¶ 7} STRS replied one week later and informed Donald that the divorce decree "does not require [Joan] to designate [Donald] as a pre-retirement beneficiary or elect a retirement plan of payment that provides a continuing benefit to [Donald] in the event of [Joan's] death." STRS further indicated that it had not received a DOPO in connection with Joan's retirement account.

3.

{¶ 8} Additionally, STRS sent a letter to Joan in June 2016, questioning whether her choice of a single life annuity plan of payment was in compliance with the requirements of the trial court's divorce decree. In its letter, STRS stated: "Your decree of divorce indicates the division of your STRS Ohio account will be decided upon your retirement. As written, we cannot determine what plan of payment or amount of the monthly benefit, if any, you are to provide to your former spouse." STRS went on to inform Joan that it would withhold any retirement benefit payments to her until it received "additional court documentation clarifying the interest, if any, your former spouse has in your retirement benefit after your death."

{¶ 9} Joan ultimately retired on July 1, 2016. However, she received only partial benefit payments for the months of July, August, and September 2016, and no such payments thereafter. The parties then engaged in discussions about how to proceed with Joan's STRS retirement benefit. Joan asked Donald to sign a STRS form affidavit to facilitate the resumption of her retirement benefit, but Donald refused.

{¶ 10} Thereafter, on January 27, 2017, Joan filed a motion for contempt. In her motion, Joan asserted that Donald's refusal to sign the paperwork constituted willful failure to cooperate in order to effectuate the division of her STRS benefit pursuant to the trial court's divorce decree.

4.

{¶ 11} A two-day hearing before a magistrate on Joan's motion for contempt began on June 15, 2017.  During the hearing, Kimmelman, Joan, and Donald each testified.

{¶ 12} For his part, Kimmelman testified that he "was asked to calculate what each parties' entitlement of the other's retirement benefits would be in conjunction * * * with the terms of the divorce decree."  He then proceeded to review the documentation given to him by the parties to ascertain what portion of the parties' monthly retirement benefits "would be considered marital property for the court's purposes."  Using the information provided, Kimmelman calculated the portion of the monthly benefits received by the parties that should be considered marital by comparing the duration of the marriage and the total time in which the parties contributed to STRS.

{¶ 13} Relevant here, Kimmelman indicated that Joan retired in July 2016, and Donald was presently collecting a disability benefit from STRS and social security.  Kimmelman testified that Joan's monthly STRS benefit totaled $5,626, $2,363.43 of which was marital based on his calculations.  Further, Donald's monthly STRS benefit was $3,554.72, $978.63 of which was marital.  Additionally, Donald received a social security benefit in the amount of $1,443.70, $469.33 of which was marital.

{¶ 14} In order to equalize the marital portion of these benefits, Kimmelman testified that Donald would need to receive a monthly share of Joan's STRS benefit in the amount of $457.74.  Notably, Kimmelman agreed on cross examination that Donald's

5.

share could also be expressed as a percentage of the account value in lieu of a dollar amount. Moreover, Kimmelman testified that the present lump-sum value of Donald's marital interest in Joan's STRS retirement account was $86,859.17.

{¶ 15} According to Kimmelman, a DOPO was not possible under Ohio law in existence at the time of the parties' divorce. However, Ohio law was changed in the intervening years, and now provides for such orders. At the hearing, Kimmelman indicated he was capable of preparing a DOPO to provide for the withholding of $457.74 from Joan's monthly benefit. Nonetheless, on cross examination Kimmelman indicated that he was never asked to prepare a DOPO by Joan or her counsel.

{¶ 16} As to the issue of survivorship benefits relating to Joan's STRS retirement account, Kimmelman agreed that the divorce decree is silent on the matter. Further, Kimmelman authenticated a STRS form affidavit that was required to be executed by both parties before Joan could select a benefit option without survivorship rights to Donald.

{¶ 17} On cross examination, Kimmelman explained that Joan had the option to choose to receive her STRS benefits in a number of different ways. First, she could receive a "straight single life monthly payment annuity," which would not provide for any survivorship benefits to beneficiaries unless she so elected (thereby reducing her monthly benefit amount). Second, Joan could elect "a single life annuity using a PLOP where she takes a specified lump sum immediately upon retirement." According to

6.

Kimmelman, Joan could then use this partial lump-sum payout from STRS (the "PLOP") to buy out Donald's $86,859.17 present interest all at once and avoid monthly withholdings. Doing so would reduce Joan's monthly benefit by $598.46. Third, Joan could choose to simply have her retirement contributions refunded to her "and not take any retirement benefits whatsoever," an option Kimmelman characterized as "very foolish." According to Kimmelman, Donald's benefit "is entirely dependent upon what [Joan] elects."

{¶ 18} Next, Joan testified. At the outset, Joan confirmed that she retired on July 1, 2016, at which time she elected to receive her benefits in the form of a single life annuity, with no survivorship rights to Donald. Thereafter, Joan received two-thirds of her monthly retirement benefits from STRS for the months of July, August, and September. When she did not receive her full benefit amount, Joan called STRS to inquire. She was told that Donald had contacted STRS and claimed an interest in her benefit. Consequently, she received a partial payment of her benefit until October 2016, at which point the benefit payments stopped altogether.

{¶ 19} According to Joan, she then met with her attorney and executed a STRS survivorship affidavit. Joan testified that she met with Donald in September 2016 to speak with him about signing off on the affidavit, but he refused to sign.

{¶ 20} At the hearing, Joan did not dispute Kimmelman's calculation of Donald's share ($457.74) in her monthly STRS benefit. However, she testified that she was

7.

unwilling to withdraw a partial lump sum from her STRS retirement account in order to pay Donald's portion up front, due to the effect that such a withdrawal would have in reducing her monthly benefit amount.

{¶ 21} Donald was the last person to testify at the hearing on Joan's motion for contempt. During his testimony, Donald confirmed that he wrote a letter to STRS in the spring of 2016 to alert STRS of his interest in Joan's retirement benefit after learning of her impending retirement. Donald indicated that he attached a copy of the divorce decree to the letter.

{¶ 22} After receiving a responsive letter from STRS informing him of general information about the need for a DOPO to accommodate benefit disbursements to former spouses, Donald discussed the matter with Joan. Donald stated that he and Joan could not agree on terms for a DOPO. Further, he testified that he corresponded with Joan's attorney during the pendency of this action, but was never presented with a DOPO or a STRS survivorship affidavit to sign. In fact, Donald insisted that he was not presented with a copy of the affidavit until June 20, 2017, five months *after* Joan filed her motion for contempt.

{¶ 23} In sum, Donald expressed his desire to have his share of Joan's STRS benefit paid out in a lump sum. Alternatively, if the court ordered monthly payments, Donald asked that the court direct Joan to elect survivorship rights to protect his interest in the event that Joan predeceased him.

8.

**{¶ 24}** Following the two-day hearing, the magistrate issued her decision on November 15, 2017. In her decision, which was adopted the same day by the trial court, the magistrate found that Donald wrongfully refused to sign the STRS affidavit that Joan presented to him. Thus, the magistrate granted Joan's motion for contempt and ordered Donald to serve 30 days in jail. The magistrate imposed a purge condition directing Donald to pay the $50 cost of filing a DOPO with the court. Further, the magistrate directed Joan to pay Donald $457.74 per month from her STRS benefit, and ordered Donald to pay Joan's attorney fees incurred as a result of the contempt proceedings.

**{¶ 25}** Two weeks later, Donald filed his objections to the magistrate's decision, asserting that he is entitled to a lump sum payment in lieu of monthly payments from Joan's STRS retirement account. Further, Donald argued that his failure to sign the STRS affidavit was not contemptuous given the fact that he was not presented with the document until five months after the motion for contempt was filed and STRS would have required further documentation from the court in order to resume benefit payments to Joan notwithstanding his execution of the affidavit.

**{¶ 26}** On March 5, 2018, Joan filed her memorandum in opposition to Donald's objections, in which she argued, inter alia, that the divorce decree was unambiguous and entitled Donald to a monthly benefit of $457.74, not a lump sum payment or survivorship benefits.

9.

{¶ 27} On October 18, 2018, the trial court issued its ruling on Donald's objections. In its order, the trial court framed the issues as follows: "The question in this post-divorce matter is whether [Donald] is entitled to survivorship benefits in [Joan's] public employee retirement plan." The court disagreed with the magistrate's conclusion that the divorce decree was unambiguous, specifically as it relates to the manner in which Joan's STRS benefit would be divided between the parties.

{¶ 28} In support of its conclusion that the divorce decree was ambiguous, the court noted that STRS was unable to ascertain the intent of the divorce decree, and also referenced the fact that the equal division of the parties' retirement benefits ordered in the divorce decree was

> not possible in 1999. There is no mention of a DOPO or any mechanism for dividing or offsetting the pensions. It did not yet exist. The division of Ohio public employee pensions did not become law until 2002. This is further indication of the divorce decree's ambiguity.

{¶ 29} Upon finding that the divorce decree was ambiguous as to the method of dividing the parties' retirement benefits equally, the trial court applied the method of dividing such benefits that prevailed in 1999, the year in which the divorce decree was issued. According to the trial court, parties wishing to divide pension plans in 1999 utilized a "separate interest" Qualified Domestic Relations Order (QDRO) pursuant to the Retirement Equity Act, 26 U.S.C. 414(p)(5)(A), which "incorporates survivorship, both

10.

pre-retirement and post-retirement." Under this structure, a coverture formula was used to calculate the former spouse's pro-rata share of the member's retirement benefit. Notably, the trial court recognized a local court rule that was in effect at the time the divorce decree in this case was issued, under which QDROs were "assumed by rule to be including certain well-known provisions including a separate interest (i.e. survivorship rights) in the alternate payee, and pre-retirement survivorship as well."

{¶ 30} Consistent with the norms of pension division described above, the trial court determined that Donald is entitled to survivorship benefits, and indicated in its order that such benefits would be incorporated into the divorce decree. Having found that Donald was entitled to survivorship rights, the trial court found that Donald could not be held in contempt for failing to sign the STRS survivorship affidavit forfeiting such rights, and vacated the magistrate's contempt finding.

{¶ 31} At the end of its decision, the trial court directed Donald to draft a DOPO consistent with its decision and model language prepared by QDRO Group. Further, the trial court found that Donald's benefits were "retroactive to the date of [Joan's] retirement and first pension payment." The court went on to indicate: "If the withheld pension benefit is paid in a lump sum, [Donald] shall be entitled to his prorated share per the coverture formula."

{¶ 32} Nearly two years later, on June 19, 2020, Donald filed a "Motion for Signing of Division of Property Order" and "Motion for Signing of Amendment to

11.

Judgment Entry of Divorce," in which he asserted that Joan refused to execute the DOPO, and requested an order from the court directing Joan to execute the documents. Under the terms of the DOPO prepared by the QDRO Group and attached to Donald's motions, he was entitled to a payment, monthly or in a lump sum, totaling 26.4% of the marital share of Joan's STRS account. The marital share was to be calculated by dividing 15.13 (the number of years Joan was contributing to STRS while married to Donald) by the total years of Joan's service credit.

{¶ 33} On July 30, 2020, Joan responded to Donald's motions by filing a memorandum explaining that her refusal to sign the proposed documents was based upon a dispute over whether the appropriate form of payment to Donald was a lump-sum payment or the percentage-based formula set forth in the DOPO prepared by the QDRO Group.

{¶ 34} Upon consideration of the parties' filings, the trial court, on August 18, 2021, adopted and journalized the DOPO prepared by the QDRO Group. The DOPO sets forth the methodology of the pension payment, as follows: "The Alternate Payee is assigned fifty percent (50%) of the Marital Portion of the Participant's Plan benefit at retirement, including any partial lump sum payment ("PLOP"), utilizing the following traditional coverture fraction: Marital Portion = Years of Credited Service During the Marriage / Total Years of Credited Service at Retirement."

12.

**{¶ 35}** Further, the DOPO directs Joan to "elect to receive Plan benefits in the form of a reduced joint and survivor annuity with the Alternate Payee as beneficiary." The entry also provides that Donald is entitled to his prorated share, per the coverture formula, of any pension benefit that is paid to Joan in a lump sum. Finally, the entry states that the DOPO "shall not prevent or preclude [Donald] from pursuing any and all claims against [Joan] for the 'back pay' of his share of [Joan's] retirement benefits to the date that [Joan] retired, nor prevent or preclude [Donald] from pursuing any remedy necessary regarding his lost STRS survivor benefit due to [Joan's] single life election prior to this Court's October 18, 2018 ruling."

**{¶ 36}** In response to the trial court's issuance of the DOPO, Joan filed her notice of appeal on September 17, 2021.

### B. Assignments of Error

**{¶ 37}** On appeal, Joan assigns the following errors for our review:

Assignment of Error 1: The lower court erred in approving the division of property order dated August 18, 2021 in that it provides for a percentage payment to defendant/appellee from plaintiff/appellant's version which provides for the dollar amount monthly payment of $457.74 consistent with the record.

Assignment of Error 2: The lower court erred in approving the version of the amendment to judgment entry of divorce filed March 26,

13.

1999 dated August 18, 2021 with attached QDRO Group's evaluation of the lost survivorship benefit in defendant/appellee's loss of STRS survivor benefit due to plaintiff/appellant's single life election prior to the lower court's October 18, 2018 ruling and for reservation of claim against plaintiff/appellant.

{¶ 38} Because appellant's assignments of error are interrelated, we will address them simultaneously.

## II.   Analysis

{¶ 39} In her assignments of error, Joan argues that the trial court erred in its division of her STRS retirement benefit vis-à-vis the issuance of the DOPO.

{¶ 40} At the outset, we must address an argument raised by Donald, namely that Joan's arguments are barred by the doctrine of res judicata because she failed to appeal the trial court's October 18, 2018 decision, in which the court found that its original divorce decree was ambiguous as to the manner in which Joan's STRS benefit would be divided between the parties, determined that Donald is entitled to survivorship benefits, and directed Donald to prepare a DOPO consistent with the court's decision. According to Donald, the October 18, 2018 decision "became a final appealable order immediately after its journalization such that immediately upon journalization appellate jurisdiction existed, permitting [Joan] to seek review of the ruling."

14.

{¶ 41} Under Section 3(B)(2), Article IV of the Ohio Constitution, appellate jurisdiction is limited to review of lower court's final judgments. To be a final, appealable order, a judgment entry must meet the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88, 541 N.E.2d 64 (1989). R.C. 2505.02(B)(1) provides that a final appealable order is "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment."

{¶ 42} In *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, the Supreme Court of Ohio examined whether a divorce decree contemplating further action on the part of the parties was a final appealable order. At the time of the parties' divorce in *Wilson*, the husband had a Teamsters pension that had not yet vested. As such, the divorce decree provided that the wife "shall receive one-half of the coverture value of the [husband's] unvested Teamsters pension if and when it becomes vested. This division shall be through a qualified domestic relations order (QDRO) prepared and signed at the time of the vesting." *Wilson* at ¶ 3.

{¶ 43} After the trial court issued its divorce decree containing the foregoing language, but before QDRO was prepared, the husband appealed. On appeal, the Ninth District dismissed the matter for lack of a final appealable order after it concluded that the divorce decree does not become final and appealable until after the QDRO is journalized. *Id.* at ¶ 5. Thereafter, husband appealed to the Ohio Supreme Court, which

15.

accepted the appeal to address the question of "whether a divorce decree that provides for the issuance of a [QDRO] is a final, appealable order before the QDRO is issued." *Id.* at ¶ 1.

{¶ 44} At the outset of its analysis, the Ohio Supreme Court explained that a QDRO is an order that "'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.'" *Id*. at ¶ 6, quoting 29 U.S.C. 1056(d)(3)(B)(i)(I) and 26 U.S.C. 414(p)(1)(A)(i). The court went on to recognize that the sole purpose of a QDRO is to "implement the terms of the divorce decree" and "it is the decree of divorce that constitutes the final determination of the court and determines the merits of the case." *Id*. at ¶ 16.

{¶ 45} Later in its opinion, the court reiterated its conclusion and stated that the divorce decree "completely divides the property," while the QDRO is only "a tool used to execute the divorce decree." *Id.* at ¶ 19. Finally, the court observed that the reasoning espoused by the Ninth District could leave parties without appellate remedies in situations in which a QDRO never issues, such as when a former spouse does not work for the time required in order for pension to vest. *Id.* at ¶ 20. Rejecting such reasoning, the court held that "a divorce decree that provides for the issuance of a QDRO is a final, appealable order, even before the QDRO is issued." *Id*. at ¶ 20. Consequently, the court

16.

found that the trial court's divorce decree was final and appealable notwithstanding the fact that a QDRO had not yet issued, and reversed the judgment of the Ninth District. *Id.*

**{¶ 46}** Referencing the Ohio Supreme Court's decision in *Wilson*, we have previously noted that the division of retirement benefits in a divorce action may be facilitated by the issuance of a QDRO. *Brooks v. Brooks*, 6th Dist. Fulton No. F-11-020, 2013-Ohio-405, ¶ 12, citing *Wilson* at ¶ 6-7. When the retirement plan at issue is a public retirement plan, the QDRO is referred to as a DOPO because it must comply with additional statutory requirements. *Roxburgh v. Richardson*, 9th Dist. Summit No. 29629, 2021-Ohio-2229, ¶ 16. Therefore, the rationale from *Wilson* relating to QDROs has been applied to DOPOs. *See Murphy v. Murphy*, 3d Dist. Seneca No. 13-20-10, 2021-Ohio-101, ¶ 19, quoting *Fiedler v. Fiedler*, 2d Dist. Montgomery No. 26921, 2016-Ohio-5349, ¶ 11, quoting *Rice v. Rice*, 8th Dist. Cuyahoga No. 95221, 2011-Ohio-1366, ¶ 7 ("""A DOPO "merely implement[s] a trial court's decision of how a pension is to be divided incident to a final divorce entry."""); *Reeves v. Reeves*, 2016-Ohio-4590, 66 N.E.3d 1152 (12th Dist.) (applying *Wilson* and stating: "While the issue in the case at bar is the future execution of a DOPO, rather than a QDRO, the reasoning remains the same and is not changed merely because the DOPO is specific to a state pension where the QDRO divides private pensions."). In *Rice*, the Eighth District plainly stated that "[t]he entry of divorce divides the property; the [DOPO] 'is merely a tool used to execute the divorce decree.'" *Rice* at ¶ 7, quoting *Wilson* at ¶ 19.

17.

{¶ 47} Here, the trial court's October 18, 2018 decision determined that the parties' intent to offset each other's retirement benefits at the time of Joan's retirement was clear from the original divorce decree. All that remained to determine was the methodology of this offset, which the trial court found to be "unclear" from the original decree. Thus, the trial court applied a coverture fraction formula in an effort to accomplish the equal offset it had already ordered in the original divorce decree. Further, the court ordered Donald to prepare a DOPO to incorporate its decision as to the offset and state with specificity how the offset would be accomplished. In other words, the further action contemplated by the trial court was not intended to, and did not, modify the decision the court already stated in its October 18, 2018 entry.

{¶ 48} Although Joan is correct in highlighting in her reply brief that the trial court's decision contemplates further action on Donald's part, her conclusion that this further action prevents the trial court's decision from being final and appealable is incorrect. Under the Ohio Supreme Court's holding in *Wilson*, the DOPO prepared by Donald and signed by the trial court did not constitute a further adjudication on the merits as to the issues raised by Joan in this appeal. Instead, those documents merely implemented the trial court's division of the parties' retirement benefits and clarified the manner in which the division would be accomplished, consistent with the trial court's determinations embodied in its October 18, 2018 decision. Since the trial court first

18.

determined the methodology for the offset in its October 18, 2018 decision, that decision was final and appealable, as argued by Donald.

{¶ 49} Joan did not appeal the trial court's October 18, 2018 decision. Under the doctrine of res judicata, a party is barred from asserting claims against a valid, final judgment that have been raised or could have been raised on appeal. *Huston v. Huston*, 9th Dist. Summit No. 29983, 2022-Ohio-1744, ¶ 6. Moreover, "App.R. 4(A)(1) sets forth that an appeal from a final order must be made within 30 days of the order's date. Otherwise, an appellate court lacks jurisdiction to review an untimely appeal." *Reeves*, *supra*, at ¶ 11.

{¶ 50} In her brief to this court, Joan argues that the trial court erred in (1) finding that the original divorce decree was ambiguous, (2) applying the coverture formula in this case rather than awarding Donald a monthly benefit of $457.74, and (3) awarding Donald survivorship benefits. As stated above, the issues raised by these arguments were all addressed by the trial court in its October 18, 2018 decision. Since Joan did not appeal that decision, res judicata bars her from challenging the trial court's resolution of her arguments here. Moreover, given Joan's failure to appeal the trial court's October 18, 2018 decision within 30 days, her appeal is untimely and we lack jurisdiction over the matter. *Reeves*, *supra*, at ¶ 15; *see also Zorn v. Zorn*, 9th Dist. Medina No. 07CA0077-M, 2008-Ohio-2391, (dismissing appeal for lack of jurisdiction where wife appealed the

19.

issuance of a QDRO, rather than appealing the final divorce decree within 30 days of that final order).

{¶ 51} Accordingly, we must dismiss this appeal for lack of a timely notice of appeal.

### III.    Conclusion

{¶ 52} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed.  The costs of this appeal are assessed to Joan under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
                 JUDGE
Thomas J. Osowik, J.

            _____
Gene A. Zmuda, J.          JUDGE
CONCUR.

            _____
                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

20.