[Cite as *Korfhage v. Fitzgerald*, 2023-Ohio-744.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Margaret A. Fitzgerald
nka Margaret A. Korfhage

  Appellee

v.

Sean P. Fitzgerald

  Appellant

Court of Appeals No.  WD-22-002

Trial Court No.  2017DR0012


**DECISION AND JUDGMENT**

Decided:  March 10, 2023

* * * * *

Theodore B. Tucker, III, for appellee.

Sean P. Fitzgerald, Pro se.

* * * * *

**DUHART, J.**

{¶ 1} In this appeal, appellant, Sean Fitzgerald, appeals from a qualified domestic relations order ("QDRO") issued by the Wood County Court of Common Pleas, Domestic Relations Division, awarding appellee, Margaret Korfhage, a partial assignment of benefits under appellant's alternative retirement plan.  For the reasons that follow, we affirm the judgment of the trial court.

## Statement of the Case

{¶ 2} On November 14, 2019, the trial court issued a divorce decision establishing the appellee would receive from appellant's TIAA Bowling Green State University Alternative Retirement Plan "an amount to award her 70% of the parties' combined accounts."

{¶ 3} On March 2, 2020, the trial court issued a decision and journal entry reaffirming the November 14, 2019 entry of divorce and establishing that the funds due to appellee from the alternative retirement plan "shall be awarded to [her] by virtue of a Qualified Domestic Relations Order." Appellant appealed this decision and the decision that was entered by the trial court on November 14, 2019. Although the appeal involved a challenge to the trial court's division of marital assets, appellant did not appeal the use of a QDRO as a method of implementing the division.

{¶ 4} On May 26, 2020, the trial court issued an order prohibiting TIAA from releasing money from the alternative retirement plan.

{¶ 5} On March 20, 2021, this court affirmed the trial court's November 14, 2019, and March 2, 2020 decisions.

{¶ 6} On July 20, 2021, the trial court issued a journal entry permitting the release of retirement plan monies, and setting aside as moot a motion to deny QDRO that had been filed by appellant. Appellant did not appeal this decision.

{¶ 7} On August 17, 2021, appellee filed a motion for approval of QDRO.

2.

**{¶ 8}** On November 8, 2021, the trial court issued a journal entry addressing the use of a QDRO to implement the division of retirement benefits as ordered in the divorce decree. Again, appellant did not file an appeal. Finally, on December 21, 2021, the trial court issued a QDRO implementing a partial division of the Bowling Green State University Alternative Retirement Plan. It is from this decision that appellant now appeals.

**Relevant Facts**
**March 2, 2020 Decision and Journal Entry of Divorce**

**{¶ 9}** The parties were divorced pursuant to a decision and journal entry filed on March 2, 2020, which reaffirmed and incorporated the trial court's earlier divorce decision, dated November 14, 2019, and adopted, in total, appellee's findings of fact and conclusions of law. Among the adopted findings of fact were the following, which established -- consistent with the trial court's November 14, 2019 decision -- the following division of the parties' combined retirement accounts:

> 17. The Court * * * finds that [appellee] is awarded from [appellant's] TIAA Bowling Green State University Alternative Retirement Plan * * * an amount to award her 70% of the parties' combined accounts. That amount, based on the foregoing, would be approximately $517,552, and that sum shall be awarded to Plaintiff by virtue of a Qualified Domestic Relations Order.

Appellant filed an appeal from the November 14, 2019 and March 2, 2020 decisions. On March 12, 2021, this court affirmed both, including the unequal division of the parties' retirement monies.

**July 20, 2021 Journal Entry -- Permitting Release of Retirement Plan Monies and Setting Aside Appellant's Motion to Deny QDRO as Moot**

{¶ 10} While the aforementioned appeal was pending, appellant filed in the trial court, inter alia, a motion to deny the relevant QDRO, and a motion to vacate, modify, or grant relief from a May 26, 2020 order of the trial court that enjoined or prohibited TIAA from releasing monies.

{¶ 11} Following a hearing, the trial court, on July 20, 2021, issued a journal entry permitting the release of monies and, further, setting aside the motion to deny the QDRO as moot. In rendering its decision, the trial court -- noting that there was a disagreement as to the method or manner of accessing funds from the TIAA retirement savings portfolio accounts, i.e., whether by QDRO or DOPO -- conducted the following analysis concerning the manner in which retirement savings plan monies owed to appellee under the divorce decision and retirement savings plan monies retained by appellant would begin to be divided and disbursed among the parties:

> * * * [In light of the disagreement as to the method or manner of accessing funds from the TIAA retirement savings portfolio accounts, i.e., whether by QDRO or DOPO] * * * TIAA has retained all the account

4.

funds, including the earnings on the investments which have increased the value of the portfolio.

* * *

* * * As to [appellant's] Motion to Vacate, Modify, or Grant Relief relating to this Court's order prohibiting the Defendant to have access to monies from the TIAA combined retirement savings portfolio accounts (which includes the Bowling Green State University alternative retirement plan account), it is first important to note that the duration of the marriage between [appellee] and [appellant] was from July 4, 1987 to July 10, 2019. * * * The Decision of the trial judge, filed on November 14, 2019, clearly ordered 70% of the parties combined funds and accounts * * * to be awarded to [appellee]. It is obvious and apparent that the trial judge was not provided with the exact amounts of the combined funds and accounts as of July 10, 2019. The amounts provided to the trial judge by [appellee] are probably accurate as being the fund or account balances on or about July 10, 2019. However, except for [certain savings and checking account values], all other funds or accounts listed as being in [appellant's] name were given balances for dates substantially prior to the effective date of the divorce. Further, the Court was referred to Plaintiff's Exhibit 38 from the Divorce hearing which gives a value of the TIAA retirement savings

5.

portfolio accounts as of September 30, 2018, which is the balance of those accounts more than eight months prior to July 10, 2019. Therefore, it is obvious to this Court that the exact amount to be paid out of the TIAA retirement savings portfolio accounts, including the Bowling Green State University alternative retirement plan account, could only be approximated. Thus, the amount of $517,552 was approximated in some manner to be the amount to be paid out of the TIAA retirement savings portfolio accounts since none of the account balances provided to the Court clearly indicated the TIAA retirement savings portfolio amounts as of July 10, 2019, being the end of the marriage. Therefore, without the accurate information, the Court is unable to provide the parties with an exact amount to be distributed out of the TIAA retirement savings portfolio accounts to [appellee] even when looking at this strictly as to those funds and accounts listed [in] the trial judge's Decision and not considering any other obligations of the Defendant pursuant to other provisions of or contained within the Court's divorce decree order.

[Appellant] considers the $517,552 figure to be the same as a judgment in favor of [appellee] against [appellant]. The Court disagrees with [appellant's] position suggesting that that amount is a judgment. As indicated above, the trial judge [who issued the divorce decree] could not

determine an exact figure at that time since the balance of the combined funds and accounts as of the effective date of the termination of the marriage was not known to the trial judge [at the time the divorce decree was issued], just as it is not known to the undersigned at this time. [Appellee] argues that releasing monies requested by [appellant] could deny her a source of being paid the additional monies to which she believes she is entitled pursuant to the divorce decree. Further, [appellee] takes the position that she is entitled to a proportionate share of the increase in the value in the TIAA retirement savings portfolio accounts based upon the investment earnings, since she would have been able to invest on her own had the distributions been made in a more timely manner subsequent to effective date of the divorce decree, which was filed on March 2, 2020. However, the withdrawal of monies by [appellant], despite filing of the appellate action by [appellant], prompted [appellee] to request that TIAA be enjoined as indicated above. It is important to note that the Court of Appeals addressed that issue [in] its Decision and Judgment. The Court of Appeals did not find that the trial judge erred in making TIAA a party to this action and by enjoining TIAA from allowing access to the accounts by the Defendant. Therefore, the TIAA funds continued to grow in value after TIAA was made a party to this action and was enjoined and prohibited

7.

from dispersing [sic] monies. Further, without a QDRO or DOPO, neither party had access to the monies in the TIAA retirement savings portfolio accounts.

* * * The parties are not disputing that there is currently over $800,000 in the TIAA retirement savings portfolio accounts which includes the BGSU alternative retirement plan account. Although the TIAA accounts are in the name of [appellant], they were determined to be marital assets by the trial judge [as indicated in the divorce decree]. So long as sufficient monies would remain in the TIAA accounts to comply with the Court's order that [appellee] receive the balance of the 70% of those combined funds and accounts as set forth above to which she is entitled (also conceivably to pay for those other amounts order[ed] to be paid by [appellant] which [appellee] indicates can and should be paid from the TIAA accounts), the Court sees no substantial reason to deny [appellant] access to monies which he claims that he desperately needs. However, the Court also believes that [appellee] should not be deprived of receiving at least a portion of what she is entitled, by the terms of the divorce decree, to be paid from the TIAA accounts. The trial judge [in an earlier decision] made TIAA a party to this action. Therefore, the Court has the jurisdiction

and the authority to order and to authorize TIAA to distribute money from the TIAA accounts.

At this time, the Court can only estimate the total amounts in each of the funds and accounts listed [in] the Decision of the trial judge, especially the total amounts in the TIAA retirement savings portfolio accounts as of July 10, 2019. It is reasonable to presume that the TIAA accounts had increased in value from September 30, 2018 to July 10 of 2019. However, [appellant] was ordered to pay some of the [appellee's] attorney fees and some other expenses incurred in the divorce action out of that the TIAA retirement savings portfolio accounts. Again, without evidence (or without an agreement between the parties) as to the accounts balances as of July 10, 2019, the Court is at a disadvantage to finalize this division of assets distributions. Therefore, although the Court is somewhat reluctant to order any distributions until those figures are known, the Court believes that it would be safe to order a partial distribution to both parties so long as adequate funds remain in the account to satisfy the claims and/or offsets of both parties. The Plaintiff's Exhibit 2 suggests that [appellee] is entitled to over $900,000. Keep in mind, [appellee's] 70% figure of over $900,000 was based upon current values. However, that figure also does not take into consideration those funds and accounts on page 6 of the trial judge's

Decision which [appellee] has been totally awarded. Using the figures provided to the Court, approximately $220,000 should be subtracted from the $900,000 since [appellee] retained her funds and accounts listed on page 6. That would leave approximately $680,000 due to [appellee], which includes all of her claims. Again, the Court does not have the actual values of all the funds and accounts as of July 10, 2019, especially the actual value of the TIAA accounts on that date.

After much thought and calculation of the amounts involved (using reasonable projections), the Court finds that it would be reasonable to grant [appellant's] Motion in part and also, on the Court's own motion, to order a partial distribution as well to [appellee]. * * * [Taking relevant circumstances under consideration], TIAA shall release the amount of $75,000 from the TIAA retirement savings portfolio accounts in the name of [appellant] to [appellant]. TIAA shall also release the amount of $500,000 from the TIAA retirement savings portfolio accounts in the name of [appellant] to [appellee]. The balance of the funds shall remain in the TIAA retirement savings portfolio accounts which it manages in the name of [appellant]. [Appellant] is prohibited from withdrawing any additional monies without a further court order. TIAA * * * shall remain a party to this action and shall be subject to the continuing order prohibiting the

10.

distribution of any additional monies without a further court order.  The release of these monies shall be made directly to the parties as indicated above or, in the alternative, at the direction of either party respectively, TIAA shall release the monies in such a manner as requested by that respective party so as to allow the funds to remain as retirement funds, if desired.

In view of this decision, [appellant's] Motion to deny the QDRO is considered moot and is hereby ordered to be set aside.

Appellant did not file an appeal from any of these orders, including those providing for a partial disbursement of the retirement savings plan funds to each party.

### November 8, 2021 Journal Entry -- Addressing Use of QDRO to Implement Division of Retirement Benefits as Ordered in the Divorce Decree

{¶ 12} On November 8, 2021, the trial court issued a "Journal Entry Decision on QDRO and $4917.17," which, in part, detailed the appropriateness and necessity of using a QDRO to implement the relevant division of retirement benefits.  In rendering this decision, the trial court, beginning with a recitation of its July 20, 2021 orders, provided as follows:

[T]his Court, in its Journal entry filed on July 20, 2021, ordered the release of $500,000 from the TIAA account to be payable to [appellee] or, at [appellee's] direction, TIAA was ordered to release the $500,000 in the manner as requested by [appellee] so as to allow the funds to remain

11.

qualified as retirement funds, if she so desired, thus making it a non-taxable transfer.  [Appellee] has represented to the Court that TIAA requires a QDRO in order to accomplish her desires.

In that same Journal Entry filed on July 20, 2021, [appellant] was authorized to receive the amount of $75,000 from TIAA Directly or to have that amount of money handled in the manner he so desired * * *. [Appellant] has successfully withdrawn the $75,000 in whatever manner he has apparently chosen.  However, [appellant] is persistent in opposing the issuance of a QDRO, which [appellee] indicates is necessary for her to have signed in order to transfer the $500,000 in the manner she so desires. [Appellant] suggests that the use of a QDRO is contrary to Ohio law.  In this Court's order from the July 15, 2021 hearing, which was filed on July 20, 2021, the Court ruled that [appellant's] earlier Motion to Deny the use of a QDRO was considered to be moot in view of the Order authorizing the above referenced partial releases of the monies from the apportionments of those retirement funds which were ordered by the trial court judge in the divorce decree.

Subsequent to the Court ordering the release of those funds as indicated above, [appellee] filed a Motion for Approval of QDRO and Supplemental Exhibit to that Motion on August 17, 2021.  [Appellee] also

12.

requested an order requiring [appellant] to sign a limited authorization which she had also submitted with the proposed Qualified Domestic Relations Order. [Appellee] hired QDRO Compliance Services and Gary Shulman, owner of QDRO Compliance Services, to prepare the documents. It is this Court's experience that this is a customary and usual manner of proceeding when a QDRO is required. Further, the Court finds that the documents prepared by Gary Shulman appear to be proper under the Ohio law. [Appellant] filed a response to [appellee's] Motion for Approval of a QDRO and set forth in that filing another Motion to Deny such. The Court has reviewed [appellant's] arguments against the Court signing this QDRO. [Appellant] has repeatedly indicated that Ohio law does not allow a QDRO in this type of situation. It is the Court's determination that whether a QDRO is required depends upon the policies of the retirement fund administrators. Despite the allegations of [appellant] that it is hearsay to suggest that TIAA requires a QDRO, the Court is satisfied that [appellee] is complying with the instructions from TIAA and that TIAA requires a QDRO in order to effectuate the transfer of those funds into another qualified retirement fund. Thus, the Court questions whether [appellant] has standing to object to what the retirement fund administrator requires. It is clear to this Court that TIAA requires the issuance of a QDRO in order to

13.

effectuate the transfer desired by [appellee]. Further, the Court does not understand [appellant's] insistence that the divorce decree did not mention the use of a QDRO as one of the ways to effectuate a division of the retirement fund, since "QDRO" is mentioned in the Decision of the trial court judge filed on November 14, 2019 and in the Findings of Fact, which included applicable law, both of which were incorporated into the final decree of divorce filed on March 2, 2020. The Court sees no conflict between the provisions set forth in the Decision of the trial court judge journalized on November 14, 2019 and the final divorce decree, which incorporates that Decision into the final divorce decree. Further, [appellant] has repeatedly suggested to this Court that the total allocation of the alternative retirement plan funds made to [appellee] is spousal support. The trial court judge dealt with the retirement funds in the Division of Property section of his Decision. The references in the Division of Property section to spousal support read as follows: '[Appellee], while she may be entitled to spousal support, has not requested any at this time and the court shall award her none. Under these highly unusual circumstances the division is in the nature of spousal support, nondischargeable in bankruptcy and equitable.' That language clearly relates to the Division of Property being in the nature of spousal support only to make it

nondischargeable in bankruptcy and indicating that the Court finds the division of property as ordered to be equitable. The Court rejects all other grounds for objecting to this Court issuing the QDRO. The court sees no reason to defer a decision on [appellee's] motion. Therefore, [appellant's] Motion to Deny is overruled, and [appellee's] Motion for approval of the QDRO is granted. [Appellant] shall have 10 days from the date of the filing of this Journal Entry within which to sign the limited authorization in a proper manner, said document being Exhibit 2 to [appellee's] Motion for Approval of QDRO filed on August 17, 2021. The signed limited authorization shall be presented to the Domestic Relations Division clerical personnel at the Wood County Court of Common Pleas * * * within the same 10 day period.

> * * *

Again, appellant did not file an appeal from the trial court's orders, which, this time, specifically and unequivocally approved the use of a QDRO to effectuate the division of retirement benefits.

### December 21, 2021 QDRO issued for Appellant's Bowling Green State University Alternative Retirement Plan

{¶ 13} On December 21, 2021, the trial court issued a Qualified Domestic Relations Order for appellant's Bowling Green State University Alternative Retirement

15.

Plan, creating and recognizing the existence of appellee's right to receive a portion of appellant's benefits payable under the plan. The order relevantly states:

**6. For Provision of Marital Property Rights:** This Order relates to the provision of marital property rights to the Alternate Payee as a result of the Divorce Decision and Journal Entry filed with the Court on March 2, 2020, between Participant and Alternate Payee. The Court further acknowledges that this Order only represents a partial assignment of benefits to the Alternate Payee under the Plan, and does not represent her full property interest in the Plan as set forth in the Divorce Decision and Journal Entry. Therefore, a second Supplemental QDRO shall be prepared and submitted to TIAA at a future date in order to provide the Alternate Payee with the remaining portion of the Alternate Payee's property interest in the Participant's benefits under this plan.

**7. Amount of Alternate Payee's Benefit:** This Order (which represents a partial payment of the amount awarded to Alternate Payee in the Divorce Decision and Journal Entry), assigns to Alternate Payee a portion of Participant's vested account balance under the Plan in an amount equal to *Five Hundred Thousand Dollars ($500,000.00)*, as of the Date of Transfer (i.e., the date TIAA segregates the monies from the Participant's account(s) into the Alternate Payee's accounts(s)). Further, the Alternate

16.

Payee's award shall be adjusted for earnings and losses from the Date of Transfer to the Date of Distribution. All amounts transferred are subject to the terms and conditions of the contracts, including applicable liquidity restrictions.

**8. Allocation of Benefits:** The Alternate Payee's award shall be transferred proportionately from all contribution sources in the Participant's account(s) as of the Date of Transfer and shall be deposited into a separate account(s) in the name of the Alternate Payee. Further, such transferred amount shall be invested in the same manner as it was invested by the Participant on the Date of Transfer.

{¶ 14} On January 20, 2022, appellant filed a motion to vacate this order or, in the alternative, to grant appellant's request for stay pending appellant's appeal to this court. That same day, appellant filed the current appeal from the order in this court.

## Assignment of Error

{¶ 15} Appellant asserts the following assignment of error on appeal:

I. The trial court committed reversible error when it journalized a Qualified Domestic Relations Order in Appellant's public retirement program under the federal Employee Retirement Income Security Act (ERISA) rather than as a Division of Property Order as required by R.C. 3105.80 et. seq.

**Analysis**

{¶ 16} In his sole assignment of error, appellant argues that the retirement plan at issue is a public retirement program account and must be divided only pursuant to a Division of Property Order ("DOPO"), as provided under R.C. 3105.80 et seq., as opposed to a QDRO under the federal Employee Retirement Income Security Act (ERISA).

{¶ 17} At the outset, we must address an argument made by appellee that appellant's argument is barred by the doctrine of res judicata, because he failed to raise the issue in an appeal of the divorce decree and, further, he failed to appeal subsequent trial court decisions that addressed retirement division issues. "Under the doctrine of res judicata, a party is barred from asserting claims against a valid, final judgment that have been raised or could have been raised on appeal." *Haddox v. Haddox*, 2022-Ohio-3500, 197 N.E.3d 1014, ¶ 49 (6th Dist.).

{¶ 18} In considering appellee's argument, we begin with a discussion of the purpose and effect of a QDRO, as set forth by the Eighth District Court of Appeals, in *Ballinger v. Ballinger*, 8th Dist. Cuyahoga No. 105180, 2017-Ohio-7077:

> A QDRO is an order that 'creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.' *State ex re. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-

18.

Ohio-252, 922 N.E.2d 214, ¶ 18, citing the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1056(d)(3)(B)(i)(I), and 26 U.S.C. 414(p)(1)(A)(i).  A QDRO is not an independent judgment entry of the court, but is rather an enforcement mechanism pertaining to a trial court's previous judgment entry of divorce or dissolution.  *Ware v. Ware*, 5th Dist. Licking No. 14 CA 28, 2014-Ohio-5410, ¶ 14.  A QDRO implements a trial court's decision of how a pension is to be divided incident to divorce or dissolution.  *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7.  A QDRO does not in any way constitute a further adjudication on the merits of the pension division, because its sole purpose is to implement the terms of the divorce decree.  *Id.* at ¶ 16.

When a QDRO is inconsistent with the final divorce decree it is void and the trial court lacks jurisdiction to issue it.  *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 19.  The question of whether a QDRO conflicts with a divorce decree presents a question of law that we review de novo.  *Enty v. Enty*, 8th Dist. Cuyahoga No. 104167, 2017-Ohio-4177, ¶ 16.

*Id.* at ¶ 6-7.

{¶ 19} In accordance with the above principles of law, we find no inconsistencies between the terms of the trial court's March 2, 2020 decision and journal entry granting

19.

the divorce and the QDRO. That is, the QDRO was not intended to, and did not, modify the March 2, 2020 decision the court. Instead, it was merely the mechanism used to implement the trial court's division of the parties' marital assets, and its contents clarified the manner in which the division would be accomplished consistent with the trial court's earlier determinations.

{¶ 20} Appellant points out that the decision of divorce made no provision for "several of the terms" that the trial court included in the December 21, 2021 QDRO. Specifically, he complains about "paragraph 8 of the QDRO," which "makes appellee's award proportional from all contribution sources in the appellant's accounts and creat[es] separate accounts in the name of appell[ee]." In addition, he complains that "[t]here is no authority under Chapter 3105 for doing a DOPO in installments." The provisions and procedures with which appellant finds fault are merely methods by which the retirement plan distribution will be accomplished; none of them constitutes an inconsistency with, or modification of, the final judgment. Appellant's arguments to the contrary are dismissed as meritless.

{¶ 21} Because the trial court first determined in its March 2, 2020 divorce decree that a QDRO would be the enforcement mechanism for dividing appellant's alternative retirement plan, the decision to use a QDRO, rather than a DOPO, was final and appealable at that time. Since appellant failed to challenge the trial court's decision to employ a QDRO in his original appeal of the divorce decree, he is barred from doing so

20.

now, in the present appeal. *See Ballinger*, 8th Dist. Cuyahoga No. 105180, 2017-Ohio-7077, at ¶ 8 ("[E]ven if we were to accept appellant's argument that the explicit mention of a QDRO as an enforcement tool was legally required[,] appellant failed to raise this argument during the original appeal * * *. Therefore, his argument would be barred by res judicata.); *see also Haddox*, 6th Dist. Lucas No. L-21-1168, 2022-Ohio-3500, at ¶48-49 (trial court's determination of methodology for offset was immediately final and appealable; failure to appeal resulted in claim later being barred by res judicata).

{¶ 22} Moreover, although already barred by res judicata, challenges to the trial court's decision to use a QDRO were subsequently raised by appellant and then expressly dismissed by the trial court in both the July 20, 2021 and November 8, 2021 journal entries. Even if appellant were not already barred from raising the issue, because the question of employing a QDRO to effectuate the division of the retirement fund was raised and then dealt with in subsequent judgments, the doctrine of res judicata bars appellant from raising the issue again here. *See Dilley v. Dilley*, 11th Dist. Geauga No. 2016-G-0078, 2017-Ohio-4046, ¶ 10-12 (res judicata applies to determinations made in previous judgment entries).

{¶ 23} Finally, appellant argues that the trial court erred in failing to comply with Wood County Court of Common Pleas Local Rule 6.21, which calls for a trial court to include language in the final judgment entry stating that it retains jurisdiction with respect to QDROs and, further, retains jurisdiction to enter additional orders as are

21.

necessary to enforce the assignment of benefits. While appellant is correct that the trial court failed to include the language contemplated within Loc.R. 6.21, he makes no claim -- and, based on our review of the record, we are likewise unable to conclude -- that he was prejudiced in any way by such failure. As indicated by the trial court, appellant was successful in withdrawing the $75,000 that he was authorized to receive from the retirement fund. On the other hand, appellee could suffer significant prejudice if the trial court's omission of Loc.R. 6.21 language were to bar her from receiving the benefits assigned to her by the judgment entry.

{¶ 24} "Local rules are created with the purpose of promoting the fair administration of justice and eliminating undue delay" and "also assist practicing attorneys by providing guidelines for orderly case administration." *Cavalry Invest. v. Dzilinski*, 8th Dist. Cuyahoga No. 88769, 2007-Ohio-3767, ¶ 16. "[C]ourts are to be given latitude in following their own local rules; the enforcement of rules of court is held to be within the sound discretion of the court." *In re T.W.*, 8th Dist. Cuyahoga Nos. 88360 and 88424, 2007-Ohio-1441, ¶ 39, quoting *Ciokajlo v. Ciokajlo,* 1st Dist. Hamilton No. C-810158, 1982 WL 8647 (July 28, 1982). We find no abuse of discretion in this instance because the QDRO is wholly consistent with the terms of the divorce decree, and because appellant has suffered no prejudice. *See Ballinger*, 8th Dist. Cuyahoga No. 105180, 2017-Ohio-7077, at ¶ 9-11 (holding that failure to follow local

22.

rule was not an abuse of discretion, where appellant suffered no prejudice because QDRO was wholly consistent with terms of trial court's judgment entry of divorce).

{¶ 25} For all of the foregoing reasons, appellant's assignment of error is found not well-taken, and the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.　　　　　　　　　　　　_____
                                                                                              JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, P.J.　　　　　　　　　　　　_____
CONCUR.                                                                        JUDGE

_____
                                                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.