[Cite as *Tekamp v. Tekamp*, 2019-Ohio-2382.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| SHERYL K. TEKAMP NKA NASH, | : | |
| Appellee, | : | CASE NO. CA2018-08-092 |
| | : | O P I N I O N |
| - vs - | | 6/17/2019 |
| | : | |
| DAVID A. TEKAMP, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 16DR38848

Ernst & Associates, David E. Ernst, 11 South Broadway, Suite 200, Lebanon, Ohio 45036, for appellee

Rittgers & Rittgers, Juliette Gaffney Dame, 12 East Warren Street, Lebanon, Ohio 45036, for appellant

**S. POWELL, J.**

{¶ 1}  Appellant, David A. Tekamp ("Tekamp"), appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, approving a proposed qualified domestic relations order ("QDRO") submitted by appellee, Sheryl K. Tekamp nka Nash ("Nash").  For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} Tekamp and Nash were married on October 26, 1985. After being married for over 30 years, Nash and Tekamp both filed for divorce. The matter ultimately proceeded to a three-day contested hearing. Prior to this hearing, the parties had engaged in extensive negotiations. These negotiations resulted in the parties agreeing on multiple aspects as to how their assets would be divided. This included Tekamp's 401(k) account. The parties do not dispute that December 31, 2016 was the stipulated division date of their marriage.

{¶ 3} The parties' negotiated agreement on how to divide their assets was memorialized in a joint exhibit submitted to the domestic relations court at the start of the three-day hearing. Upon being presented with the parties' joint exhibit, the domestic relations court addressed the parties and asked:

> All right and from my advantage point [sic] that is a spreadsheet
> that purports to address each of the assets that exist in this
> case, put a value on those assets and then equally divide them,
> is that correct?

Neither party objected to the domestic relations court's characterization of the parties' joint exhibit nor did the parties object to the method in which the domestic relations court was to divide their assets. This, as noted above, included Tekamp's 401(k) account.

{¶ 4} Due to the parties' negotiated agreement, the three-day contested hearing was held primarily to address Nash's motion for spousal support. Opposing Nash's motion, Tekamp argued that Nash should not receive any spousal support since she would be receiving an equal split of their assets. For example, as Tekamp testified when explaining why he believed Nash was not entitled to receive a spousal support award:

> Q: Based on Joint Exhibit 1 are you asking that the Court
> basically accept those sources of income as Ms. Tekamp's sole
> spousal support award and just ask that this Court divide
> everything right there and ask them to (indiscernible) to simply
> walk away from all other sources of income and not award any
> further spousal support?

A: That was a long question.

Q: Sorry… basically… you know… looking at Joint Exhibit 1, based on the planning that you've done for your family, are you asking that no further spousal support award be ordered?

A: Yes.

{¶ 5} Tekamp thereafter testified that he did not believe Nash should receive any spousal support because "we have a nice chunk of savings that we can split and both be comfortable… yes that is what I think." This included shares of stock purchased from Tekamp's employer through a stock purchase and sale agreement. Specifically, as Tekamp testified regarding these shares:

Q: So, we've agreed, at this point, to the stock shares values being set and fixed at $342.00 a share?

A: Correct.

Q: And that you have six thousand of them?

A: Correct.

Q: Okay and as the joint exhibit would reflect that represents a combined value of $2,052,000.00.

A: Correct.

Q: And Joint Exhibit 1 we have broken that down… divided that in half to where in this document you were willing to provide half of that being $1,026,000.00 to [Nash]?

A: [Correct.][1]

Tekamp further testified that this sum would be paid out over ten years and that he and Nash would "share that fifty-fifty."

{¶ 6} On May 30, 2017, the domestic relations court issued a decision that rejected

---

1. We note that Tekamp actually responded by stating "Mm-hmm." The context of Tekamp's testimony indicates his response was in the affirmative.

Tekamp's claim that Nash should not be awarded any spousal support. The domestic relations court instead awarded Nash spousal support in the amount of $4,500 per month. The spousal support award was to continue for "an indefinite term to be reasonable and necessary[.]" The domestic relations court reached this decision after considering the great disparity in the parties' incomes and their roles in managing the household during their marriage. The domestic relations court's decision also incorporated the parties' negotiated agreement on how to divide and distribute their assets.

{¶ 7} On August 14, 2017, the domestic relations court issued a judgment entry and decree of divorce. As part of its decree, the domestic relations court noted that "[t]he parties stipulated that all property and assets are marital and subject to equal division and both shall cooperate to facilitate the transfer/division." Specifically, as it relates to Tekamp's 401(k) account, the domestic relations court stated:

> Husband is a participant in the Stress Engineer 401(k) with an approximate amount of $1,165,901.76. This is to be divided 50/50 by QDRO. The amount will be rolled-over or distributed to wife and will be established as a 401(k) account in the name of Sheryl K. Nash.

{¶ 8} On August 29, 2017, Tekamp filed a notice of appeal from the domestic relations court's decision. But, after Tekamp failed to file a transcript of proceedings as required by this court's scheduling order, this court dismissed Tekamp's appeal on January 11, 2018. Approximately one month later, on February 6, 2018, the domestic relations court issued an amended judgment entry and decree of divorce that modified its spousal support order from monthly $4,500 payments to one lump sum payment of $60,000. The lump sum payment corresponded with Tekamp's equity value in one of the properties owned by him and Nash. This modification was also made by agreement of the parties.

{¶ 9} On July 2, 2018, Nash filed a notice of presentation of proposed QDRO with the domestic relations court. The proposed QDRO included language that entitled Nash to

receive an equal division of Tekamp's 401(k) account as of the stipulated division date of their marriage, December 31, 2016, plus any "[i]nvestment gains and/or losses" that had since accrued after that date until distribution. Tekamp objected to the notice and argued the QDRO should not include the language suggested by Nash. This was because, according to Tekamp, allowing Nash to take an equal division of the gains his 401(k) account had since accrued "would be inequitable and against the meaning of the Decree."

{¶ 10} On July 18, 2018, the domestic relations court held a hearing on the matter. Following this hearing, the parties submitted supplemental briefings for the domestic relations court's consideration. After receiving the parties' supplemental briefings, the domestic relations court issued a decision that approved the proposed QDRO submitted by Nash that included the requested "gains and/or losses" language. Specifically, the domestic relations court approved language in the QDRO that the "[i]nvestment gains and/or losses [from Tekamp's 401(k) account] will be allocated to [Nash's] portion from December 31, 2016, until distribution."

{¶ 11} As part of this decision, the domestic relations court noted Tekamp's argument that "[b]ecause this benefit was not specifically given to Ms. Nash in the Decree, Mr. Tekamp argues it cannot be given to her now through the QDRO." But, as noted above, the domestic relations court disagreed with Tekamp's position. In so holding, the domestic relations court relied primarily on its Loc.R. 6.9 entitled "Assumptions." Pursuant to that rule at Section (B)(2)(b):

> 2. Unless otherwise agreed, a QDRO for a defined contribution plan shall contain the following provisions or be governed by these assumptions:
>
> * * *
>
> b. the alternate payee's share of the benefits shall be credited with investment earnings and/or losses from the date of division until distribution[.]

- 5 -

{¶ 12} The domestic relations court therefore found:

> As a result, though it is true that a Court speaks through its entries, and the Decree does not specifically award gains and losses from the time of the division date, a Court also speaks through its Local Rules, where here indicate that unless otherwise agreed, a QDRO shall contain a provision that gives the alternate payee all gains and losses from the date of division until distribution.

{¶ 13} Continuing, the domestic relations court stated:

> The Court gave both parties until July 27, 2018 to provide the transcript of the final hearing to show whether gains and losses were specifically addressed on the record. The Court has learned that the issue was not specifically addressed. Accordingly, while there is nothing to show gains and losses would be included, there is also nothing to say they would not.
>
> The Court finds the first three words in Local Rule 6.9 to be controlling. "Unless otherwise agreed…" gains and losses will be included in the QDRO.
>
> Therefore, the Court will sign a QDRO that gives Ms. Nash as the alternate payee all gains and losses since the time of division.

{¶ 14} Concluding, the domestic relations court stated:

> Surely, if Ms. Nash's one-half share was worth LESS now than what it had been on December [31], 2016, Mr. Tekamp would argue that it would not be fair to take from his portion of the 401(k) to make up the difference. The converse is also true.

**Appeal**

{¶ 15} Tekamp now appeals from the domestic relations court's decision, raising two assignments of error for review. For ease of discussion, this court will address Tekamp's two assignments of error together.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED BY FAILING TO ENFORCE THE DIVORCE DECREE WITH REGARD TO THE 401K OF THE PARTIES.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT'S DECISION TO INCLUDE "GAINS AND LOSSES" IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 20} In his two assignments of error, Tekamp argues the domestic relations court erred by approving the proposed QDRO submitted by Nash. Specifically, Tekamp challenges the language that entitled Nash to an equal distribution of any gains and/or losses accrued by his 401(k) account since the stipulated division date of their marriage, December 31, 2016, until distribution. We find no merit to Tekamp's claim.

{¶ 21} A QDRO is an order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶ 18. A QDRO is not an independent judgment entry of the court but is rather "an enforcement mechanism pertaining to a trial court's previous judgment entry of divorce or dissolution." *Ballinger v. Ballinger*, 8th Dist. Cuyahoga No. 105810, 2017-Ohio-7077, ¶ 6, citing *Ware v. Ware*, 5th Dist. Licking No. 14 CA 28, 2014-Ohio-5410, ¶ 14. When a QDRO is inconsistent with the final divorce decree it is void and the trial court lacks jurisdiction to issue it. *Ballinger* at ¶ 7, citing *Ramsey* at ¶ 19. The question of whether a QDRO conflicts with a divorce decree presents a question of law that this court reviews de novo. *Enty v. Enty*, 8th Dist. Cuyahoga No. 104167, 2017-Ohio-4177, ¶ 16.

{¶ 22} In *Merz-Oliver v. Oliver*, 12th Dist. Clermont No. CA2002-04-031, 2003-Ohio-712, this court found a domestic relations court did not err by rejecting appellant's claim that he should be awarded "dividends, gains, or losses" attributable to appellee's 401(k) account where the divorce decree was silent on that issue. The decree in that case instead ordered only that the account was to be divided equally between the parties pursuant to a QDRO.

In so holding, this court noted that "[i]t is well-established that a trial court lacks jurisdiction to modify a property division, including the distribution of a retirement plan, after the issuance of a judgment entry and decree of divorce." *Id.* at ¶ 22.

{¶ 23} Tekamp argues that because in *Olivier* this court found the domestic relations court did not err by rejecting appellant's claim that he should be awarded "dividends, gains, or losses" attributable to appellee's 401(k) account in that case, the same must be true here. That is to say the domestic relations court erred by approving the language contained in the proposed QDRO submitted by Nash – that she was entitled to receive an equal division of any accrued "[i]nvestment gains and/or losses" to Tekamp's 401(k) account after the stipulated division date of their marriage, December 31, 2016, until distribution – when the divorce decree ordered only the account be "divided 50/50 by QDRO."

{¶ 24} But, unlike here, the domestic relations court in *Olivier* did not have guidance on how to proceed under its local rules. The domestic relations court in this case did. Again, pursuant to Loc.R. 6.9 Section (B)(2)(b):

> 2. Unless otherwise agreed, a QDRO for a defined contribution plan shall contain the following provisions or be governed by these assumptions:
>
> * * *
>
> b. the alternate payee's share of the benefits shall be credited with investment earnings and/or losses from the date of division until distribution[.]

{¶ 25} The plain language of this rule sets forth a presumption – or in this case an assumption – that the alternate payee's share shall include any gains and/or losses for a defined contribution plan *unless otherwise agreed*. Just as the domestic relations court found, "while there is nothing in the record to show gains and losses would be included, there is also nothing to say they would not." Although we believe there is some indirect evidence indicating gains and/or losses accrued by Tekamp's 401(k) account would be

included, we agree that there is no specific, explicit, or direct evidence to conclusively determine the issue either way. Therefore, when considering the domestic relations court's Loc.R. 6.9 Section (B)(2)(b), it must be assumed that Nash's share of Tekamp's 401(k) account would include any gains and/or losses accrued after the stipulated division date of their marriage, December 31, 2016, until distribution. This same assumption would apply in all instances *unless otherwise agreed* to by the parties.

{¶ 26} "Trial courts in this state have the right to interpret and explain their own entries." *McFarland v. McFarland*, 5th Dist. Licking No. 01CA00021, 2001 Ohio App. LEXIS 4722, * 10 (Oct. 21, 2001), citing *Trifiletti v. Wolford*, 9th Dist. Lorain No. 99CA007513, 2000 Ohio App. LEXIS 5163 (Nov. 8, 2000). The same must also be true in regard to a trial court – or in this case a domestic relations court – interpreting, explaining, and enforcing its own local rules. *See Holdbrook v. Holbrook*, 12th Dist. Warren No. 2017-05-055, 2018-Ohio-2360, ¶ 17 ("courts are given great latitude in following and enforcing their own local rules"); *see also Jackson v. Jackson*, 11th Dist. Lake Nos. 2011-L-016 and 2011-L-017, ¶ 30 ("the enforcement of court rules is within the discretion of the court"). This right derives from a trial court's inherent power to control its own docket and the progress of the proceedings in its own court. *Kranz v. Kranz*, 12th Dist. Warren No. CA2012-05-038, 2013-Ohio-1113, ¶ 17.

{¶ 27} "[T]here is no error when, in its sound discretion, the court decides that the peculiar circumstances of a case require deviation from its own rules." *Paramount Parks, Inc. v. Admiral Ins. Co.*, 12th Dist. No. CA2007-05-066, 2008-Ohio-1351, ¶ 37 citing *Yanik v. Yanik*, 9th Dist. No. 21406, 2003-Ohio-4155, ¶ 9. But, in this case, the domestic relations did not *deviate* from its own local rules. The trial court instead *adhered* to those rules by applying the assumption contained in Loc.R. 6.9 Section (B)(2)(b). Tekamp claims this was error and fundamentally unfair given his understanding of the parties' agreement and his

apparent unfamiliarity with the domestic relations court's local rules. But "[t]he general rule is that ignorance of the law is no excuse." *State ex rel. Board of Education v. Hold*, 174 Ohio St. 55, 57 (1962). And, had his 401(k) account accrued losses rather than gains, we have little doubt that Tekamp would have argued the assumption applied to reflect those losses.

### Conclusion

{¶ 28} The domestic relations court did not err by approving the proposed QDRO submitted by Nash that included language that entitled her to an equal distribution of any gains and/or losses accrued by Tekamp's 401(k) account since the stipulated division date of their marriage, December 31, 2016, until distribution. That is to say the domestic relations court properly applied the assumption contained in Loc.R. 6.9 Section (B)(2)(b) to the case at bar that, unless otherwise agreed, the alternate payee's share shall include any gains and/or losses for a defined contribution plan. Therefore, finding no merit to any of the arguments raised by Tekamp herein, Tekamp's two assignments of error are overruled and the domestic relations court's decision is affirmed.

{¶ 29} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.