[Cite as *Fitzgerald v. Fitzgerald*, 2024-Ohio-5419.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| Margaret A. Fitzgerald nka Margaret A. Korfhage | Court of Appeals No. WD-23-036 |
| | Trial Court No. 2017DR0012 |
| Appellee | |
| v. | |
| Sean P. Fitzgerald | **DECISION AND JUDGMENT** |
| Appellant | Decided: November 15, 2024 |

* * * * *

Theodore B. Tucker, III, for appellee.

Sean P. Fitzgerald, Pro se.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} This matter is before the court on appeal from the Wood County Court of

Common Pleas, Domestic Relations division, post-divorce judgments of June 12, 2023,

June 13, 2023, and July 11, 2023. Finding no reversible error, we affirm.

## II. Facts and Procedural History

{¶ 2} Appellant, Sean Fitzgerald, and appellee, Margaret A. Korfhage (f/k/a

Fitzgerald) were married in 1987 and had two children, born in 2002 and 2006. Appellee

filed for divorce in 2017. Early in the proceedings, the parties each accused the other of financial misconduct, and on January 18, 2017, the trial court entered a temporary order, enjoining the parties from removing, transferring, encumbering, pledging, hypothecating, damaging, hiding, concealing, assigning, or disposing of any property without consent of court. The order specifically referenced retirement plans and enjoined the parties from liquidating or cashing in any retirement or pension plan.

{¶ 3} After lengthy proceedings, the matter was tried to the court in 2019 and the trial court entered final judgment, granting divorce and dividing marital assets, on March 2, 2020, incorporating the decision of November 14, 2019, and adopting and incorporating appellee's findings of fact and conclusions of law. Pertinent to this appeal, the final decree included findings that supported a disproportional property division in lieu of spousal support. As part of the order of property division, the trial court awarded appellee "an amount to award her 70% of the parties' combined accounts" from appellant's Teachers Insurance and Annuity Association/College Retirement Fund (TIAA) Bowling Green State University Alternative Retirement Plan, which the trial court estimated "would be approximately $517,552."

{¶ 4} Appellant filed a timely appeal of the divorce decree, challenging the "unequal property division" in the award of marital assets as part of the assigned error on appeal. On March 12, 2021, we affirmed the trial court, including the trial court's award of marital assets to appellee that included "70 percent of the parties' combined retirement accounts," finding no abuse of discretion by the trial court. We found:

2.

Notably, and as stated above, the court then awarded appellee 70 percent of the proceeds from the sale of the marital residence, 70 percent of the parties combined retirement accounts, and ordered that "each party shall solely be responsible for any credit card debt they currently have in their respective names . . . ."

Reviewing the November 14, 2019 and March 2, 2020 decisions of the trial court, it is apparent that the court carefully reviewed the testimony of the parties and the financial documents. We cannot find that the unequal distribution, especially in light of the length of the marriage and decision to forego a request for spousal support in consideration whereof, was an abuse of the court's discretion.

*Fitzgerald v. Fitzgerald,* 2021-Ohio-751, ¶ 64-65 (6th Dist.), *appeal not allowed*

*Fitzgerald v. Fitzgerald,* 2021-Ohio-2742 (*Fitzgerald I*).[1]

{¶ 5} In April 2020, appellee learned that appellant's TIAA Bowling Green

University Alternative Retirement Plan account might have insufficient funds to satisfy

---

[1] We note that the present appeal is the eighth of nine appeals that appellant filed to date. In 2018, appellant filed an appeal challenging the denial of discovery of appellee's mental health records, which we dismissed for failure to comply with App.R. 3(A). In 2019, he filed two appeals addressing contempt findings and purge conditions, which we consolidated and addressed in *Fitzgerald v. Fitzgerald,* 2020-Ohio-5442 (6th Dist.). In 2020, appellant filed an appeal of the final judgment and decree of divorce and an appeal of the trial court's order, joining Bowling Green State University Alternate Retirement Plan/TIAA as a third-party defendant, which we consolidated and addressed in *Fitzgerald v. Fitzgerald,* 2021-Ohio-751 (6th Dist.). Also in 2020, appellant attempted to appeal the court's order on appellee's emergency motion to show cause relative to custody issues, which we dismissed for failure to comply with App.R. 3(A). In 2022, appellant appealed from the December 21, 2021 QDRO, arguing issues related to property division, ordered in the decree, which we addressed in *Korfhage v. Fitzgerald,* 2023-Ohio-744 (6th Dist.). The present appeal was filed in 2023. Most recently, appellant filed an appeal of the trial court's denial of his motion to find appellee in contempt in 2024, which we dismissed upon appellant's failure to timely file a brief on April 2, 2024. For ease of discussion, we address only the appeals concerning the final judgment and decree and/or QDROs within the decision, designating these prior decisions as *Fitzgerald I and II.*

3.

the trial court's property award from the account. Appellant had withdrawn significant sums from the account between July 2019 and January 2020. On April 16, 2020, appellee filed a motion to join the Bowling Green State University Alternative Retirement Plan/TIAA as a third-party defendant and to enjoin TIAA from releasing further funds to appellant, which the trial court granted.

{¶ 6} On June 26, 2020, appellant filed an objection to appellee's proposed Qualified Domestic Relations Order (QDRO), followed by motions in the trial court seeking to deny the QDRO and to vacate the order enjoining release of retirement funds to appellant. Appellant challenged distribution based on percentage, arguing the trial court's award to appellee was an exact judgment of $517,552.

{¶ 7} In an entry filed July 20, 2021, the trial court expressly rejected appellant's claim that the $517,552 recited in the final judgment was an exact judgment in favor of appellee. Instead, the trial court noted that the account balances provided to the trial court at the time of judgment represented the balance "more than eight months prior to July 10, 2019." Thus, the trial court calculated the amounts in the retirement funds, using reasonable projections, and determined approximate amounts to be awarded to each party. The trial court ordered partial distribution from the retirement accounts, $75,000 to appellant and $500,000 to appellee. Based on this decision, the trial court considered the motion to deny the QDRO moot.

{¶ 8} On August 17, 2021, appellee filed a motion for approval of QDRO and retained QDRO compliance services to prepare the necessary documents. Appellant again

4.

opposed issuance of a QDRO. On November 8, 2021, the trial court entered an order addressing the use of a QDRO to implement the division of retirement benefits, noting the TIAA required a QDRO to disburse funds to appellee as retirement funds, in a non-taxable transfer. The trial court overruled appellant's objections to the use of a QDRO.

{¶ 9} On December 21, 2021, the trial court issued a QDRO for partial division of the TIAA accounts held in the Bowling Green State University Alternative Retirement Plan No. 103259, assigning appellee "a portion of [appellant's] vested account balance under the Plan in an amount equal to *Five Hundred Thousand Dollars ($500,000.00)*[.]" The Order included the following: "Further, the Alternate Payee's award shall be adjusted for earnings and losses from the Date of Transfer to the Date of Distribution." On January 11, 2022, appellee filed a motion for approval of supplemental QDRO, submitting the calculation for distribution of assets prepared by appellee's expert, James P. Coco, C.P.A., using TIAA statements and noting gains and/or losses. The proposed supplemental QDRO contained the same provision regarding earnings and losses.

{¶ 10} On January 20, 2022, appellant filed an appeal of the December 21, 2021 QDRO. On that same date, appellant filed a motion to vacate the QDRO he had appealed, alternatively seeking a stay of the proceedings pending his appeal. Appellee's motion for approval of the supplemental QDRO remained pending for several months. In challenging the QDRO on appeal, appellant argued reversible error in journalizing a QDRO rather than a division of property order (DOPO) under R.C. 3105.80 et seq. and further argued that the QDRO was inconsistent with the divorce decree. Appellant also

5.

argued error relative to the entry's compliance with Wood County Common Pleas Court Local Rule 6.21.

{¶ 11} On March 10, 2023, we affirmed the trial court's December 21, 2021 QDRO, and noted that appellant failed to challenge the trial court's decision to use a QDRO following the trial court's decision on July 20, 2021, and November 8, 2021. *See Korfhage v. Fitzgerald,* 2023-Ohio-744, ¶ 22 (6th Dist.) (*Fitzgerald II*). We also quoted extensively from the trial court's decision, addressing the calculation of 70 percent and rejecting appellant's claim that "the $517,552 figure to be the same as a judgment in favor of [appellee] against [appellant]." *Id.* at ¶ 11. Finally, we found any failure to comply with Local Rule 6.21 resulted in no prejudice to appellant and found no abuse of discretion by the trial court "because the QDRO is wholly consistent with the terms of the divorce decree[.]" *Id.* at ¶ 24.

{¶ 12} During the pendency of this appeal, the parties continued to litigate matters concerning finances and the distribution of retirement funds.[2] Pertinent to this appeal, appellant filed a motion seeking release of funds from his retirement accounts and informed the trial court he was contemplating filing a motion for relief from judgment under Civ.R. 60(B) to address the disposition of interest income from the pension funds.

---

[2] At this point, a different judge had been assigned to hear the matter, and the trial court held numerous hearings to conduct a thorough review of the case history and the pending motions. The case was initially assigned to Judge Alan Mayberry. On February 13, 2018, the Ohio Supreme Court assigned Judge Stephen Yarbrough to hear the case. On January 14, 2021, the Ohio Supreme Court assigned Judge Howard E. Hall to continue hearing the case. The present matters on appeal were decided by Judge Hall.

6.

The trial court addressed the issue of gains and losses at hearing on November 10, 2022, and asked the parties to brief the matter, granting leave to the parties to file supplemental briefs. The trial court also filed and served the supplemental QDRO on TIAA, the plan administrator. Appellant signed the supplemental QDRO with a notation preserving his right to appeal. The supplemental QDRO contained the same language regarding gains and losses, as required by Local Rule 6.21. Appellant filed no appeal of the supplemental QDRO.

{¶ 13} In subsequent proceedings, appellant continued to oppose application of Local Rule 6.21, which provides a presumption that gains and losses would be included in the QDRO unless expressly stated otherwise in the final judgment decree. In contrast, appellee argued that gains and losses were appropriately included in the QDRO, pursuant to the Local Rule. As to the calculation of gains and losses, the trial court permitted testimony of appellee's expert, James Coco, C.P.A., over appellant's objection.

{¶ 14} Coco testified regarding his analysis of gain and losses, using $517,552 as the starting point, the amount specified in the decree as of July 10, 2019, the date established as the end of the marriage. Coco calculated gains and losses for appellee's portion of the retirement funds. He testified he reviewed the TIAA fund, which totaled $783,665.09 as of June 30, 2019. The accounts included the Bowling Green Alternative Retirement Plan, containing most of the balance, or $692,059, along with the Wayne State Defined Contribution Plan, about $26,000, the Wayne State 403(b), about $5,000, and the traditional IRA, about $60,000.

7.

{¶ 15} As to percentages, Coco testified that 70 percent of the fund, or the amount specified by the trial court of $517,552, was the beginning amount he was provided to calculate the gains and losses for the portion of the fund awarded to appellee. After calculation of gains and losses, Coco testified that the amount due to appellee equaled $215,765.85, considering the previous distributions to appellee of $500,000 recorded on March 31, 2022, and $15,000.02, recorded on December 31, 2022.

{¶ 16} On May 25, 2023, the trial court filed a journal entry, following hearing, and addressed gains and losses, noting the issue had been referenced in appellant's prior appeal. Specifically, the trial court noted our decision in *Fitzgerald II* issued March 10, 2023, upholding the QDRO issued on December 21, 2021, with the QDRO containing reservation language for the appellee regarding gains and/or losses, "consistent with Local Rule 6.21."

{¶ 17} On June 12, 2023, the trial court entered its journal entry decision on gains/losses, noting persuasive authority from other jurisdictions including *Tekamp v. Tecamp,* 2019-Ohio-2382 (12th Dist.), regarding application of a rule similar to Local Rule 6.21, as well as this court's decision in *Fitzgerald II,* which the trial court construed as addressing the issue of gains/losses according to the Local Rule 6.21. On that same date, the trial court filed the "2d Supplemental" QDRO and served the "2d Supplemental" QDRO on TIAA, the plan administrator.

{¶ 18} On June 13, 2023, the trial court filed an entry captioned "Journal Entry and Notice of Hearing," summarizing the testimony and argument at hearing and

8.

referencing the trial court's decision regarding gains and/or losses. The trial court scheduled the next hearing date to address matters unrelated to the QDRO.

{¶ 19} After continued hearings, on July 11, 2023, the trial court issued a "3rd Supplemental" QDRO for distribution of the retirement funds. That same day, the QDRO was served on TIAA, the plan administrator of appellant's TIAA accounts with BGSU Alternative Retirement Plan (No. 103259) and Wayne State University Defined Contribution Retirement Program (No. 103167).

{¶ 20} On July 12, 2023, appellant filed his appeal of the June 13 and July 11, 2023 entries. Appellant did not seek a stay of execution regarding distribution of funds in the retirement accounts. Appellant subsequently amended his notice of appeal, with leave of court, and appealed the June 12, June 13, and July 11, 2023 entries.

### III. Assignment of Error

{¶ 21} Appellant asserts the following assignments of error on appeal:

1. Trial court made a reversible error when it modified the final divorce Judgment in violation of R.C. 3105.171(I) and controlling decisional authority by issuing four QDROs that altogether modified and enlarged by $213,213.85 the distribution of the ARP made in the final divorce Judgment.

2. The trial court made a reversible error when it did not enforce the unambiguous final Judgment as written.

3. The trial court made a reversible error when it used a QDRO to modify the final divorce Judgment.

4. The trial court made a reversible error when it issued the fourth QDRO on July 11, 2023 because it distributed defendant-appellant's separate, post-marital property to plaintiff-appellee.

9.

5. The trial court committed reversible error when it construed local rule 6.21 as substantive law and so denied Defendant-Appellant due process and equal protection of the substantive statutory law of Ohio.

6. The trial court made a reversible error when it relied on Local Rule 6.21, *Nash v. Tekamp*, and *Borton v. Borton* to modify the final divorce Judgment.

7. The trial court made a reversible error when it applied Local Rule 6.21 as substantive law that superseded a state statute, R.C. 3105.171 (I).

8. The trial court made a reversible error when it relied on the cases of *Borton v. Borton* and *Nash v. Tekamp* to modify the final divorce Judgment in violation of R.C. 3105.171(I) and the Ohio Supreme Court authority of *Walsh v. Walsh* and *Wilson v. Wilson.*

9. The trial court made a reversible error when it journalized a QDRO on July 11, 2023 that distributed to plaintiff funds from defendant's Wayne State University defined contribution retirement program (No. 103167) when the final divorce Judgment made no award to plaintiff from that account.

## IV. Analysis

{¶ 22} Appellant appeals from three separate entries of the trial court. The June 12, 2023 entry is the decision on gains and losses. The June 13, 2023 entry is an entry summarizing the June 9 hearing, and memorializes the portions of the court's decision on gains and losses recited into the record at hearing. The July 11, 2023 entry is the third supplemental QDRO for distribution of retirement funds to appellee from the Bowling State University Alternative Retirement Plan No. 103259 and the Wayne State University Defined Contribution Retirement Program No. 103167, both employer-sponsored retirement plans funded through TIAA.

10.

{¶ 23} Appellant's assignments of error challenge the award of an amount beyond the $517,552 stated in the divorce decree, arguing that any increase is a modification of the decree in violation of R.C. 3105.171(I). Appellant also argues that the gains and losses to the retirement accounts were his separate property and that the TIAA funds held in the Wayne State University account constituted separate property, and therefore, these funds should not be awarded to appellee. Finally, appellant argues that application of Local Rule 6.21 denied him due process and equal protection of the substantive, statutory law under the Ohio Revised Code.

{¶ 24} In response, appellee argues that the assignments of error are moot, as appellant did not request a stay of execution, and the TIAA disbursed the funds to appellee. In the alternative, appellee argues that the issues raised by appellant are barred by the doctrine of res judicata.

{¶ 25} For ease of discussion, we address the assigned error based on the issues raised in the parties' briefs. We begin by clarifying the issues on appeal, followed by consideration of appellee's arguments that the mootness doctrine and the doctrine of res judicata bar appellant's appeal.

1. **The main issue on appeal is the propriety of calculating gains and losses, as contained within the QDRO, and whether this calculation constitutes an improper modification of the final divorce decree.**

{¶ 26} In his first, second, third, and eighth assignments of error, appellant argues that the trial court modified the final decree in violation of R.C. 3105.171(I) by issuing four QDROs that increased the retirement account distribution to appellee beyond the

11.

$517,552 recited in the decree through application of gains/losses calculations. In his fourth and ninth assignments of error, appellant argues that the trial court issued a QDRO that distributed his separate property as marital property, again based on the calculation of gains and losses, with additional argument based on the lack of identification of the Wayne State retirement funds in the divorce decree. Finally, in appellant's fifth, sixth, and seventh assignments of error, appellant argues the trial court erred in applying Local Rule 6.21 as substantive law, relative to calculating gains and losses, and modified the final divorce decree in violation of R.C. 3105.171(I). Thus, appellant's argument primarily concerns the calculation of gains and losses in determining the amount of the TIAA funds due and payable to appellee, as implemented through the QDRO.

{¶ 27} As part of the division of property, the trial court identified appellant's "sole and separate property" in the final decree, consisting of appellant's Glass City Federal Credit Union savings and checking accounts, appellant's University of Michigan Credit Union account, appellant's health savings account at PNC Bank, appellant's Fidelity Rollover IRA, and the parties' joint Glass City Federal Credit Union savings account. The trial court then awarded appellee her bank and credit union accounts, her Charles Schwab SEP IRA account, and her Notre Dame Academy Savings and Retirement Plan. The trial court, furthermore, awarded appellee 70% of "the parties combined accounts," payable from appellant's TIAA Bowling Green State University Alternative Retirement Plan. Thus, the trial court treated appellant's TIAA fund as a

12.

marital asset to be divided as part of the court-ordered division of marital property. To effectuate this division, the trial court's decision contemplated use of a QDRO.

{¶ 28} "A QDRO is a qualified domestic relations order 'which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan.'" *Wilson v. Wilson,* 2007-Ohio-6056, ¶ 6, quoting Employee Retirement Income Security Act of 1974 ("ERISA"), Section 1056(d)(3)(B)(i)(l), Title 29, U.S. Code and Section 414(p)(1)(A)(i), Title 26 U.S. Code. A QDRO implements the trial court's decision regarding the division of property incident to divorce. *Id.* at ¶ 7. The sole purpose of the QDRO "is to implement the terms of the divorce decree." *Id.* at ¶ 16.

{¶ 29} As an order to execute the division of property incident to divorce, the QDRO may not modify the judgment, post-decree, without consent of both parties. *See* R.C. 3105.171(I); *see also Hyslop v. Hyslop,* 2004-Ohio-3793, ¶ 28 (6th Dist.). Therefore, a QDRO must be consistent with the decree to comply with R.C. 3105.171(I), with an inconsistent QDRO resulting in a voidable judgment. *See Ostanek v. Ostanek,* 2021-Ohio-2319, ¶ 31-34 (clarifying and rejecting earlier precedent that held a trial court that modified the decree in violation of R.C. 3105.171(I) lacked subject matter jurisdiction, resulting in a void judgment).

{¶ 30} We consider whether a QDRO conflicts with a divorce decree as a question of law, applying de novo review. *Fitzgerald II,* ¶ 18, citing *Enty v. Enty,* 2017-Ohio-4177, ¶ 16 (8th Dist.); *see also State v. Shaw,* 2024-Ohio-3231, ¶ 16 (12th Dist.), citing *Tekamp*

13.

*v. Tekamp,* 2019-Ohio-2382, ¶ 21 (12th Dist.), citing *Enty* at ¶ 16. "In scrutinizing whether a QDRO impermissibly modifies a decree, a court does not engage in a mere exercise of textual comparison. Rather, the Court must discern whether the QDRO's provisions materially alter the rights and obligations established by the decree." *Shaw* at ¶ 16.

{¶ 31} Accordingly, we review appellant's assigned error, claiming modification to the decree, applying the de novo standard of review. But because appellee argues those assignments of error raise issues that are barred by the mootness doctrine or the doctrine of res judicata, we must first address this argument to determine which, if any, of appellant's assignments of error are properly before us for review.

### 2. The appeal of the QDRO is not moot, based on appellant's failure to seek a stay of execution.

{¶ 32} Appellee first argues that appellant's assignments of error are barred by the mootness doctrine. "The mootness doctrine prevents courts from deciding cases in which no controversy remains." *Kalbaugh v. Kalbaugh,* 2020-Ohio-3873, ¶ 20 (9th Dist.), citing *In re A.G.*, 2014-Ohio-2597, ¶ 37. Thus, we limit our review to cases in which there are actual controversies. *Id.,* citing *Miner v. Witt,* 82 Ohio St. 237, 238 (1910).

{¶ 33} In support of her argument regarding mootness, appellee cites to only the procedure for seeking a stay of execution. Appellee otherwise provides no authority to demonstrate that a failure to seek a stay results in mootness due to disbursement of funds pursuant to a QDRO containing disputed terms. Simply put, appellee fails to demonstrate that disbursement of the funds equals a satisfaction of judgment, considering appellant's

14.

challenge to the QDRO as a modification of the decree in violation of R.C. 3105.171(I). Additionally, we note other jurisdictions have rejected argument of mootness in considering similar challenges. *See, e.g., Kalbaugh v. Kalbaugh*, 2020-Ohio-3873, ¶ 20-21 (9th Dist.) (where husband challenged the trial court's authority to enter DOPO, matter not moot based on subsequent, amended DOPO, and court could proceed to the merits of husband's challenge); *Saha v. Saha,* 2019-Ohio-4496, ¶ 11, fn 1 (5th Dist.) (where appellant had cashed and accepted property settlement checks, the record demonstrated ongoing dispute and therefore appellant's actions did not constitute "a full and formal satisfaction of judgment warranting dismissal under the doctrine of mootness").

{¶ 34} Therefore, lacking clear argument or authority demonstrating the absence of a live dispute concerning the propriety of the QDRO that includes calculations of gains and losses, we find appellee's reliance on the mootness doctrine is misplaced.

### 3. Res Judicata clearly bars all but one of appellant's claims as stated in his assignments of error.

{¶ 35} Appellee's next argument asserts the doctrine of res judicata as a bar to appellant's appeal. "Under the doctrine of res judicata, a party is barred from asserting claims against a valid, final judgment that have been raised or could have been raised on appeal." *Haddox v. Haddox,* 2022-Ohio-3500, ¶ 49 (6th Dist.), citing *Huston v. Huston*, 2022-Ohio-3500, ¶ 6 (9th Dist.).

{¶ 36} The issues raised in appellant's appeal concern alleged modification of the divorce decree within the challenged QDRO, based on calculations of gains and losses to

15.

appellee's award from the TIAA funds from the date of division until the date of distribution. Appellant specifically challenges application of Wood County Common Pleas Court Local Rule 6.21, which provides:

A. This rule applies to all qualified domestic relations orders ("QDRO") and division of property orders ("DOPO") filed with this court.

…

B. Assumptions

1. Unless otherwise agreed, a QDRO/DOPO for a defined benefit plan shall contain the following provisions or shall be governed by the following assumptions:

   a. The QDRO/DOPO will be a separate interest QDRO/DOPO, meaning the alternate payee's benefits shall be independent of those of the participant.

   b. The division of benefits shall be based on the language of the case of *Hoyt v. Hoyt,* 53 Ohio St.3d 177, 559 N.E.2d 1292 (1990) and its progeny.

   c. The benefits assigned to the alternate payee shall include any and all supplemental benefits. Further, the benefits assigned to the alternate payee shall include all early retirement subsidies and should the alternate payee commence receipt of benefits prior to participant's retirement the alternate payee's benefits will be recalculated to reflect the subsidy.

   d. The alternate payee will be deemed to be the surviving spouse of the participant to the extent of benefits assigned for the purpose of a pre-retirement survivor annuity.

   e. The date of the division of the benefits will be the date of the final hearing of the case.

2. Unless otherwise agreed, a QDRO/DOPO for a defined contribution plan shall contain the following provisions or be governed by the following assumptions:

   a. The date of the division of benefits will be the date of the final hearing of the case.

   b. The alternate payee's share of the benefits shall be credited with investment earnings and/or losses from the date of division until distribution.

   c. The QDRO/DOPO will allow an immediate lump sum distribution of the alternate payee's benefits.

   d. Any loans from the plan shall be charged to the participant's benefits and will remain the obligation of the participant.

  e. The alternate payee's share of the benefits will not reflect credit for sums deposited into the plan after the date of division which are based on service for periods prior to the date of division.

 D. Mandatory Language

In all cases in which a QDRO/DOPO is to be used, the final judgment entry shall contain the following language:

1. "The court retains jurisdiction with respect to the Qualified Domestic Relations Order/Division of Property Order to the extent required to maintain its qualified status and the original intent of the parties. The court also retains jurisdiction to enter further orders as are necessary to enforce the assignment of benefits to the non-participant as set forth herein, including the re-characterization thereof as a division of benefits under another plan, as applicable, or to make an award of spousal support, if applicable, in the event that the participant fails to comply with the provisions or order."

2. "The participant shall not take actions, affirmative or otherwise, that can circumvent the terms and provisions of the Qualified Domestic Relations Order/Division of Property Order, or that may diminish or extinguish the rights and entitlements of the participant."

{¶ 37} Pursuant to the Local Rule, the trial court included the language concerning calculation of gains and losses in each iteration of the QDRO, including the 3d Supplemental QDRO that is the subject of this appeal. Significantly, in appellant's prior appeal of the December 21, 2021 QDRO, the order appellant challenged contained the following language concerning gains and losses:

7. **Amount of Alternate Payee's Benefit**: This Order (which represents a partial payment of the amount awarded to Alternate Payee in the Divorce Decision and Journal Entry), assigns to Alternate Payee a portion of Participant's vested account balance under the Plan in an amount equal to *Five Hundred Thousand Dollars ($500,000),* as of the Date of Transfer (i.e.., the date TIAA segregates the monies from the Participant's account(s) into the Alternate Payee's account(s)). Further, the Alternate Payee's award shall be adjusted for earnings and losses from the Date of Transfer to the Date of Distribution…

17.

Thus, the issue of gains and losses, as provided for in Local Rule 6.21, was an issue that could have been challenged in appellant's prior appeal.

{¶ 38} Because appellant's assignments of error largely rest on his challenge to the gains and losses calculation provided in the QDRO, pursuant to Local Rule 6.21, and appellant failed to assert a challenge based on application of Local Rule 6.21 relative to any prior iteration of the QDRO, his challenge based on Local Rule 6.21 in the present appeal is barred by res judicata. Each of these assignments of error rest on the premise that $517,552 was the amount certain awarded to appellee because Local Rule 6.21 could not "enlarge" appellee's award based on calculation of gains and/or losses on her portion of the fund. Considering our prior decisions and the history of the case, this issue is clearly barred by res judicata. Accordingly, we find all issues raised by appellant's first through eighth assignments of error not well-taken. Thus, only the merits of appellant's ninth assignment of error are properly before this court.

### 4. Appellant waived his challenge to the designation of the Wayne State University Defined Contribution Retirement Program in the trial court.

{¶ 39} In his ninth and final assignment of error, appellant argues the trial court erred in ordering a distribution from his Wayne State retirement account, because the divorce decree did not identify this account and no prior QDRO identified this account. Without further argument or reference to any legal authority, appellant concludes this award constituted a modification of the decree.

{¶ 40} In reviewing the record, we note that appellant failed to question the inclusion of the Wayne State retirement funds as part of the TIAA plan during the

18.

proceedings in the trial court. As noted by appellee, the inclusion of the Wayne State account as part of his TIAA plan was acknowledged by appellant at hearing on March 10, 2023. Furthermore, James Coco, appellee's expert, testified on May 5, 2023, regarding the TIAA retirement plan, noting the fund included the Bowling Green plan, the Wayne State plan, the Wayne State 403(b), and a traditional IRA. Coco testified that he reviewed the TIAA plan for calculation of gains and losses to appellee's portion of the funds. At no time during these hearings did appellant argue that the Wayne State plan was not part of the accounts referenced in the March 2, 2020 divorce decree.

{¶ 41} Because appellant did not raise the issue he now argues in the trial court, we consider the issue waived. "'[I]t is a cardinal rule of appellate procedure that a party cannot assert new legal theories for the first time on appeal.'" *Calvert v. Calvert,* 2013-Ohio-4421, ¶ 17 (6th Dist.) (citations omitted.). "Arguments raised for the first time on appeal are generally barred." *Norton v. Norton,* 2023-Ohio-2992, ¶ 48 (6th Dist.), quoting *Lester v. Don's Automotive Group, LLC,* 2021-Ohio-4397, ¶ 49 (6th Dist.).

{¶ 42} In reviewing the record, moreover, we note that the December 21, 2021 QDRO anticipated other funds within the TIAA plan as liable to the terms of the QDRO. Specifically, the 2021 QDRO stated: "[A]ny successor plan to the Plan or any other plan(s) to which liability for the provision of the Participant's benefits described below is incurred shall also be subject to the terms of this Order." This is consistent with the Local Rule, which provides for mandatory language to be included in the final judgment entry as follows:

19.

The court also retains jurisdiction to enter further orders as are necessary to enforce the assignment of benefits to the non-participant as set forth herein, including the re-characterization thereof as a division of benefits under another plan, as applicable… .

{¶ 43} Furthermore, as noted by appellee, appellant challenged this "any other plan" language in a prior appeal, noting the December 21, 2021 QDRO contained the language but the divorce decree omitted mandatory language under Local Rule 6.21. Therefore, in his prior appeal, appellant appeared to argue that the trial court erred by *not* including the "other plan" language in the decree, a slightly different position to his present argument, that the trial court's omission in the decree prevented it from designating another plan in the supplemental QDRO he now appeals.

{¶ 44} In *Fitzgerald II,* we addressed appellant's argument of inconsistency between the decree and the prior QDRO, which contained the same language identifying other plans, and found the QDRO was consistent with the decree. In the present appeal, the 3d Supplemental QDRO contains identical language, with the addition of a designation of another plan. In our review, we consider whether the QDRO is consistent with the divorce decree and do not parse the language, but instead consider whether the QDRO's provisions alter the obligations established by the final judgment. *Shaw,* 2024-Ohio-3231 at ¶ 16. In this case, we do not find material alteration to the obligations, and therefore, no modification to the decree. Therefore, even if appellant's argument regarding the Wayne State fund were properly preserved for the appeal, his argument regarding modification lacks support in the record. Accordingly, we find his ninth assignment of error not well-taken.

20.

## V. Conclusion

**{¶ 45}** Finding substantial justice has been done, we affirm the judgments of the Wood County Court of Common Pleas, Domestic Relations division. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.  

_____
JUDGE

Christine E. Mayle, J.  

Gene A. Zmuda, J.  
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.